# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| In re Stokes Excavating, Inc.,<br><br>　　　　Debtor. | Bankruptcy No. 10-B-74818<br>Chapter 11<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the application of the Fox Valley Laborers' Health & Welfare and Pension Funds (the "Fund") for attorneys' fees. For the reasons set forth herein, the Court finds that the Fund is entitled to $1,384.25 in attorneys' fees under the collective bargaining agreement. However, the Fund's request for a determination that the fees are an administrative expense and request for an order mandating the immediate payment of the fees are denied.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O).

## II. FACTUAL BACKGROUND

The Debtor filed for protection under Chapter 11 with this Court on September 28, 2010, and has continued to operate post-petition as a debtor-in-possession. Pre-petition, the Debtor entered into a collective bargaining agreement with the Construction and General Laborers' District Council of Chicago and Vicinity, a labor union, by which the Debtor was obligated to pay contributions for each

hour worked by its employees to the Fox Valley Laborers' Health & Welfare and Pension Funds (the "Fund") and other parties. The collective bargaining agreement also provided that the Debtor was required to pay the Fund's attorneys' fees incurred in collecting delinquent amounts, and that any late payments were subject to 10% liquidated damages.[1]

Since filing its bankruptcy petition, the Debtor has never taken any step under 11 U.S.C. § 1113 to reject or modify the collective bargaining agreement, nor does it argue that the provisions of Section 1113 would not apply to the agreement. However, the Debtor has not always timely paid the contributions required under the agreement. On November 10, 2010, the Court entered an order on the uncontested motion of the Fund, ordering the Debtor to "continue remitting to the Funds on-going payment of all post-petition benefit contributions until a reorganization plan is finalized and this matter is terminated or until such time as this Court enters [an] order relating to the Debtor's obligations under the collective bargaining agreement." (Order, Nov. 10, 2010, ECF No. 39). On September 14, 2011, the Fund brought another motion against the Debtor, alleging that the Debtor had failed to pay required contributions and union dues for the months of May 2011 through August 2011. The Fund sought an order compelling the Debtor to pay $2,173.31 in dues and contributions for May and June 2011, including a 10% late fee, together with the dues and contributions for August 2011 within 7 days. The Fund also sought attorneys' fees. The Debtor did not object to an order compelling payment of the past-due amounts, but objected to any attorneys' fees. The Court entered an order on September 21, 2011, compelling the Debtor to pay the past-due amounts, including the late fees, within 7 days, and granted the Fund 14 days to file a petition for attorneys'

---

[1] The Debtor has not contested any of the factual allegations made by the Fund in its motion or raised any issue of fact.

fees. On October 6, 2011, the Fund filed its petition for attorneys' fees, together with an attached itemization of time, by which the Fund asked the Court to enter an order awarding the Fund $2,049.25 for the fees it incurred in bringing the motion to compel and ordering the Debtor to pay the amount within 7 days. The Debtor filed an objection to the fee petition.

### III.  DISCUSSION

The Debtor makes two objections: first, that the amount sought in fees is unreasonable and disproportionate to the amount the Fund was attempting to collect; and second, that even if the Fund is entitled to fees, it is not entitled to an order compelling immediate payment of those fees.[2]

### A. Reasonableness of the Fees

The Debtor first argues that the Fund should have taken more steps to informally settle the matter, or at least made a formal demand for payment, before incurring costs by filing a motion to compel with the Court. However, this was not the first time the Debtor had failed to make payments. The Court had already entered an order compelling the Debtor to continue making payments under the agreement in November 2010. Moreover, the Debtor has not disputed that it failed to make the required payments for May through August. The Debtor has also admitted that the Fund did send a letter to Debtor's counsel on August 1, 2011, demanding payment, and made numerous phone calls to the Debtor's counsel in August demanding payment, all of which occurred before the Fund filed the motion.

The Debtor's second argument is stronger, that the fees sought of $2,049.25 are

---

[2]The Debtor also objected to an argument that the Fund made that the fees were mandated by ERISA. However, since the Debtor did not contest the Fund's assertion that the fees were provided by the collective bargaining agreement, I see no need to address the ERISA question.

disproportionate to the $2,173.31[3] in payments it sought to compel, particularly since that amount already included a 10% late fee as liquidated damages. I tend to agree that the fees sought are somewhat disproportionate, but at the same time the contract provides for fees and the Fund should not be forced to sit by and let the Debtor breach its obligations solely because the Fund fears any recovery will be eaten up by legal fees. After reviewing the itemization, and applying the lodestar method, I find that the hourly rate is reasonable, but that part of the time spent was not reasonable or was not properly supported. Thus, while the Fund's attorney itemized spending over 2.5 hours preparing the fee petition, I will reduce the amount by 1.0 hour, or $200, since the time spent seems excessive under the circumstances. I will also deduct the entries of Josiah Groff on August 1, 2011, for 0.60 hours, or $155, and September 9, 2011, for 2.00 hours, or $310. Both of these entries are 'block-style' entries, listing multiple tasks in a single entry, which do not all necessarily relate to acts caused by the Debtor's non-compliance. Thus the entries include general references to 'analyzing the docket' or 'reviewing the docket,' or refer to matters not described anywhere in the application, such as 'analyzing a motion to accept settlement.' It is therefore impossible for the Court to separate out what portion of the itemized work in those two entries might have related to the collection activities.

This results in a total reduction of $665 that I deem not reasonable or properly supported in the application. Therefore, I find that the Fund is entitled to $1,384.25 in attorneys' fees under the collective bargaining agreement in connection with the motion to compel. However, as I discuss in the next section, the Fund has not demonstrated that the fees are entitled to administrative priority.

---

[3]According to the Debtor's written objection, the amount due for August 2011, which had not been calculated at the time of the Fund's motion, was an additional $133.46. (ECF No. 110).

### B. Timing and Priority of Payment of Attorneys' Fees

The Fund argues that it is entitled to immediate payment of the attorneys' fees because the right to fees arises out of an unrejected collective bargaining agreement. Section 1113 of the Bankruptcy Code states that "[n]o provision of [the Bankruptcy Code] shall be construed to permit a [debtor-in-possession] to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. §1113(f). However, the Fund confuses a breach of contract with a modification or rejection of a contract. Section 1113 means that a debtor-in-possession cannot try to modify its obligations under the contract or to reject the agreement and treat the breach as a prepetition breach under Section 365(g) without following the procedure under Section 1113 and gaining court approval. However, the fact that the Debtor is contractually obligated to make a payment does not mean the Fund is entitled to an order of this Court compelling immediate payment if the Debtor fails to make that payment, particularly where that payment might ultimately result in less of a distribution to other creditors.

As Judge Coar has stated, "nothing on the face of section 1113 addresses the *priority* to be accorded claims under a CBA" and "there is nothing on the face of section 1113 which even intimates that Congress intended to preempt or trump the §507 priorities." Tool & Die Makers Local Lodge No. 113 v. Buhrke Indus., Inc., Nos. 94-C-5728, 94-C-5729, 1996 WL 131698 (N.D. Ill. Mar. 20, 1996); see also, In re Moline Corp., 144 B.R. 75 (Bankr. N.D. Ill. 1992) (Ginsberg, J.); In re Fleming Packaging Corp., Nos. 03-82408, 08-82410, 03-82411, 2004 WL 2106579 (Bankr. C.D. Ill. Aug. 31, 2004) (Perkins, J.); Peters v. Pikes Peak Musicians Assoc., 462 F.3d 1265, 1269, 1270-21 (10th Cir. 2006) ("[A] bankruptcy claim arising from the breach of a collective bargaining agreement

may be accorded priority status *only* insofar as it fits into one of the categories singled out for preferential treatment in § 507.") (quoting Adventure Res., Inc. v. Holland, 137 F.3d 786, 796 (4th Cir. 1998)). If Congress had wanted to provide a blanket priority for obligations under a collective bargaining agreement, it could have added a category in Section 507 or Section 503.

Moreover, even if the amounts due under the agreement were entitled to priority status, that fact would not necessarily mean that the Court would enter an order compelling immediate payment. A "bankruptcy court has discretion in determining when administrative expenses are to be paid" and "some courts in chapter 11 have deferred payments until plan confirmation or liquidation, while other courts have allowed the earlier payment of administrative claims unless special circumstances dictate otherwise." Journeymen Plasterers Protective & Benevolent Soc' Local No. 5 v. Energy Insulation, Inc. (In re Energy Insulation, Inc.), 143 B.R. 490, 496 (N.D. Ill. 1992) (Coar, J.) (internal citation omitted). A debtor-in-possession who cannot modify or reject a collective bargaining agreement but needs to reorganize will have every incentive to comply with the agreement, but that does not mean that a *court* should force immediate payment of delinquent amounts where the payment may come at the expense of higher-priority creditors. Or, if the debtor-in-possession is breaching its obligations, a party to a collective bargaining agreement has "many remedies, including a motion to dismiss, motion to appoint a trustee (who, presumably, would comply with the CBA), and all of its rights and remedies under the labor laws." Buhrke Indus., 1996 WL 131698.

In many instances, obligations under a collective bargaining agreement will be entitled to administrative priority as post-petition wages under Section 503(b)(1)(A)(i), which is what the Fund argues here. However, while the Debtor has agreed to an order compelling the immediate payment

of the arrearage for ongoing payments required under the agreement, together with the liquidated damages, the Debtor argues that the attorney's fees are not entitled to administrative priority under Section 503(b)(1), either because the agreement was entered into pre-petition or because Section 503(b)(1)(A)(i) does not include attorneys' fees incurred to collect past-due wages. The Debtor is wrong on the first argument, but correct on the second.

### 1. The Attorneys' Fees Were In Connection with Post-Petition Services

Section 507(a) grants priority to administrative expenses under Section 503(b), which allows for administrative expenses "including - (1)(A) the actual, necessary costs and expenses of preserving the estate, including - (i) wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(i)(A). The Debtor initially argues that, under the reasoning of the Seventh Circuit Court of Appeals in In re Jartran, Inc., 732 F.2d 584 (7th Cir. 1984), the attorneys fees are not entitled to priority because they relate to a pre-petition contract. In Jartran, the court held that a claim will be afforded priority under Section 503 only "if the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business." 732 F.2d at 586 (quoting In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)).

However, the facts in Jartran are easily distinguishable. In Jartran, a publishing company sought administrative priority in a Chapter 11 case for amounts owing for advertisements published in the Yellow Pages where the advertisements were published post-petition, but "the agreement among the parties was entered into, and the ads were placed without possibility of revocation, before the petition was filed." 732 F.2d at 587. The court found that the policy behind the administrative

expense priority was to give reorganizing debtors the ability to induce creditors to furnish goods or services post-petition. Id. While certain of the services by the creditor were performed post-petition, the court emphasized that there was no allegation that the debtor-in-possession requested post-petition that the creditor "continue work on ads for which the closing date had passed" or "had a duty to take affirmative steps to prevent [the creditor] from engaging in post-petition performance." Id. Therefore, the court found that the debtor-in-possession had in no way attempted to induce the creditor to perform post-petition and the debt was not entitled to priority.

In contrast, in this case, the Debtor-in-Possession did have "a duty to take affirmative steps to prevent [the creditor] from engaging in post-petition performance" because the obligations arose out of a collective bargaining agreement. Under Section 1113, a collective bargaining agreement may only be altered or rejected by court order after hearing on a proper application and compliance with the requirements of that section. Section 1113 is clear that "[n]o provision of [the Bankruptcy Code] shall be construed to permit a [debtor-in-possession] to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. § 1113(f). Therefore, unlike in Jartran, the Debtor could not simply wait silently and let the employees continue working while secretly intending to reject the contract. Also in contrast to the facts in Jartran, in this case the Debtor-in-Possession actively "elect[ed] to receive benefits under the contract after filing of the petition." 732 F.2d at 587. The Debtor-In-Possession continued to retain, employ and direct the union employees post-petition, and the post-petition obligations under the agreement at issue arose out of that post-petition work. Therefore, while the agreement was entered into pre-petition, the obligations for work performed post-petition are entitled

to administrative expense priority.

### 2. The Attorneys' Fees Did Not Constitute Wages

The Debtor next argues that, while Section 503(b)(1)(A)(i) provides for priority treatment of wages, it does not provide such treatment for attorneys' fees incurred in collecting those wages, even if the fees would be provided by contract or other law. Although the language in Section 503(b)(1) uses the non-limiting term "including," the sections of the Bankruptcy Code granting priority have been read strictly and narrowly. As the Supreme Court has stated, "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors" and therefore "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655 (2006). Therefore as one court has noted, the "omission of any reference in § 503(b) to fees and costs of collecting administrative claims ... makes it equally clear that there was no intent to accord priority to collection expenses." In re Swain, Inc., 97 B.R. 660, 662 (Bankr. S.D. Fla. 1989).

Other courts have disagreed, but they have either relied on the argument that Section 1113 independently grants priority or have relied on tax cases, which are distinguishable. Thus, one Nebraska court relied on cases granting priority to attorneys' fees incurred in collecting taxes to hold that ancillary damages, such as fees incurred in collecting delinquent plan contributions, are entitled to priority. In re M & S Grading, Inc., No. BK02-81632-TJM, 2009 WL 2501066 (Bankr. D. Neb. July 27, 2009). However, as noted in Swain, the tax cases are distinguishable, because unlike the priority for wages, Section 503 expressly grants priority not only to the taxes themselves, but also

to "any fine, penalty, or reduction in credit relating to a tax." 11 U.S.C. §503(b)(1)(C); Swain. Other courts have granted priority to attorneys' fees and other ancillary damages by arguing that they are part of the total 'package of compensation' provided by the employment agreement, which for collective bargaining agreements cannot be modified without complying with the procedures in Section 1113. Thus, in Teamsters Indus. Sec. Fund v. World Sales, Inc. (In re World Sales, Inc.), the court held that "ancillary damages by the debtor under the CBA," such as attorneys' fees for collecting post-petition wages, were entitled to the same priority as the wages themselves. 183 B.R. 872, 878 (9th Cir. B.A.P. 1995). The World Sales court, focusing on the general policy of the priority sections to induce post-petition services and relying on Section 1113, held that the full consideration inducing post-petition work should be entitled to priority status, which "must encompass the entire bargain between the parties, including performance due upon foreseen and bargained for contingencies." 183 B.R. at 877. However, as noted above, case law within this district and the majority of courts have held that Section 1113 does not independently grant priority status, and the court in World Sales gave little to no discussion as to *why* ancillary damages would constitute either 'wages' or an 'actual, necessary cost or expense of preserving the estate' under Section 503(b). Given the language and structure of Section 503(b) and the Supreme Court's holdings in cases such as Howard Delivery, I find that the Fund has failed to demonstrate that its attorneys' fees are entitled to priority as an administrative expense.

## CONCLUSION

For the foregoing reasons, the Court finds that the Fund is entitled to $1,384.25 in attorneys' fees under the collective bargaining agreement; however, to the extent the Fund seeks a

determination that the fees are an administrative expense or an order compelling the Debtor to pay the fees immediately, the request is denied.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: December 9, 2011

The Honorable Manuel Barbosa
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on December 09, 2011.

**Richard G Larsen**
Myler Ruddy & McTavish
105 E. Galena Blvd., Suite 800
Aurora, IL 60505

**Michele M Reynolds**
Dowd, Bloch & Bennett
8 South Michigan, 19th Floor
Chicago, IL 60603

_____
Kimberly Conrad, Judicial Assistant